FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
98 NOV 23 PM 4: 42

SIGN_____
RICHARD T. MARTIN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ABIGAIL MUNIZ | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 98-766-A-M3 |
| | § | |
| UNITED HEALTHCARE SERVICES | § | |
| and STACY DUHON | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' JOINT MOTION TO DISMISS, OR ALTERNATIVELY
## STAY PROCEEDINGS, AND TO COMPEL ARBITRATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Comes now United HealthCare Services ("United HealthCare") and Stacy Duhon ("Duhon"),

Defendants in the above-referenced case, and file this their Memorandum of Law in Support o f their

Joint Motion to Dismiss, or Alternatively Stay Proceedings, and to Compel Arbitration, showing in

support as follows:

### I.

### PRELIMINARY STATEMENT

Plaintiff, Abigail Muniz ("Plaintiff" or "Muniz") has brought the present suit against her

former employer, United HealthCare, and a former United HealthCare manager, Duhon, for alleged

discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 and

pursuant to the Louisiana Employment Discrimination Law, LSA-R.S.23:301, *et seq.* Plaintiff

additionally alleges that United HealthCare's and Duhon's treatment of her constituted assault and

battery. United HealthCare and Duhon move to dismiss, or in the alternative stay, Plaintiff's suit on

the grounds that Plaintiff and United HealthCare are parties to a broad arbitration agreement which

requires arbitration of all the disputes arising out of Plaintiff's employment relationship with United



HealthCare. The Federal Arbitration Act requires that the Court enforce the parties' arbitration agreement by dismissing or staying the present action and compelling the parties to arbitrate the disputes contained in Plaintiff's complaint.[1]

## II.

## FACTS

Plaintiff began work with United HealthCare on October 23, 1995 when she was hired as a customer service representative. Affidavit of Thomas Russell("Russell Aff.") at ¶3, a true and correct copy of which is attached hereto as Exhibit "A". As part of Plaintiff's terms and conditions of employment at United HealthCare, Plaintiff was given United HealthCare's Employee Handbook. *Id. at* ¶4, 5, 6. Upon receipt of the Employee Handbook, each employee is asked to review it and sign an acknowledgment form. The form asks the employee to acknowledge that he or she "received a copy of United HealthCare Code of Conduct and Employee Handbook... I will remain familiar with, and agree to abide by these policies." A true and correct copy of Plaintiff's Employee Handbook Acknowledgment (hereinafter "Acknowledgment" or "Arbitration Agreement") is attached hereto as Exhibit "B". On or about June 6, 1996, Plaintiff signed the Acknowledgment form. Russell Aff. at ¶6; Exhibit "B". The Acknowledgment specifically lists United HealthCare's Internal Dispute Resolution/Employment Arbitration policy.[2] By signing the Acknowledgment,

_____

[1]     Some or all of Plaintiff's claims may also be subject to dismissal on other bases under Fed. R. Civ. P. 12. This Court, however, need not address any of those issues if Plaintiff's claims are subject to arbitration. In the event this Court concludes that any of Plaintiff's claims are properly before it, United HealthCare and Duhon reserve their right to file a motion challenging such claims under Fed. R. Civ. P. 12.

[2]     The provision discussing the arbitration policy states:
"Internal Dispute Resolution/Employment Arbitration Policy (§A5). These policies provide the opportunity for prompt and objective review for employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to

Plaintiff agreed to submit "all employment related disputes which are based on a legal claim to arbitration under United HealthCare's policy." *Id.* United HealthCare's Employment Arbitration Policy is summarized in the Employee Handbook, discussed in the Acknowledgment, and is available to all employees upon request. A true and correct copy of United HealthCare's Employment Arbitration Policy is attached hereto as Exhibit "C".

### III.

### ARGUMENT AND AUTHORITIES

**A.    The Federal Arbitration Act applies to Plaintiff's claims and makes them subject to compulsory arbitration.**

The Federal Arbitration Act governs the duty to arbitrate cases between parties to an arbitration agreement which involves "commerce". Federal Arbitration Act, 9 U.S.C. § 2 ("the Act"). The purpose of the Act was to reverse the longstanding judicial hostility to arbitration that had existed at English common law and had been adopted by American courts and to place arbitration on the same footing as other contracts." *Freeman v. Minolta*, 699 So.2d 1182,1185 (La.App.2 Cir. 1997), *writ denied,* 706 So.2d 977 (La. 1998) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Section 2 of the Act provides,

> "a written provision in...a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract...shall be valid, irrevocable, and enforceable..."

9 U.S.C. § 2.

The term "commerce" in the Act is broadly construed. *Freeman,* 699 So.2d at 1186. Consistent with this view, federal and state courts alike have held that an employment relationship with a company that is engaged in interstate commerce qualifies as a "contract evidencing a transaction involving commerce" within the meaning of §2 of the Act. *Id.*; *see also Paladino v.*

---

arbitration under United HealthCare's policy."
Acknowledgment, P.2.

-3-

*Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998); *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 217 (5th Cir. 1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745,747 (5th Cir. 1996); *BWI Companies, Inc. v. Beck*, 910 S.W.2d 620, 622(Tex. App.--1995, no writ).   Plaintiff clearly had an employment relationship with a company involved in interstate commerce, namely United HealthCare.   The affidavit of Thomas Russell states that, "United HealthCare is a corporation headquartered in and incorporated in Minnesota but which has offices, corporate subsidiaries, HMOs, and managed health care plans which it staffs under management contracts throughout the United States." <u>Russell Aff.</u> at ¶2. As United HealthCare is engaged in interstate commerce, the Act governs the Arbitration Agreement between Plaintiff and United HealthCare.

The Act mandates that Courts enforce arbitration agreements in the same way in which they enforce other types of contracts.  Section 4 of the Act provides that a party aggrieved by another party's failure to arbitrate under a written arbitration agreement may petition any U.S. District Court and that Court "**shall make an order** directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. §4 (emphasis added).  The Act's mandate compels the Court to honor the parties' agreement.  "By its terms, the Act **leaves no place for the exercise of discretion by a district court**." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213-218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis added).

**B.**    **Plaintiff agreed to arbitrate and her claims clearly fall within the scope of the agreement.**

In determining whether parties should be compelled to arbitrate under the Act, the court must undertake a two-step inquiry in determining:

(1) whether there is a valid agreement to arbitrate between the parties; and

(2)  whether the dispute in question falls within the scope of that arbitration agreement.

*Rogers v. Brown*, 986 F.Supp. 354, 357 (M.D. La. 1997)(citing *Webb v. Investacorp.*, 89 F.3d 252, 258 (5th Cir. 1996)).

1.     Plaintiff agreed to arbitrate.

By signing the acknowledgment, Plaintiff expressly agreed to abide by the policies contained in the Employee Handbook and to "submit all employment related disputes based on a legal claim to arbitration under United HealthCare's policy". Acknowledgment at p.2. Plaintiff explicitly acknowledged her understanding that "arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim". Acknowledgment at p.2 Undoubtedly, Plaintiff agreed to arbitrate her claims.

2.     Plaintiff's claims clearly fall within the scope of Arbitration Agreement.

Because the Arbitration Agreement is binding on the parties, any claims which fall within its scope must be arbitrated. Plaintiff has sued United HealthCare and Duhon for discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 and pursuant to the Louisiana Employment Discrimination Law, LSA-R.S.23:301, *et seq.* Plaintiff additionally alleges that United HealthCare's and Duhon's treatment of her constituted assault and battery.

Clearly, the Arbitration Agreement encompasses all of Plaintiff's claims. The Employee Handbook, for which Plaintiff signed an Acknowledgment and to which she agreed to abide, delineates the claims subject to the Arbitration Agreement:

> "any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: **Title VII of the Civil Rights Act of 1964**, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, and all applicable amendments; **state human rights or fair employment practices laws**; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other **tort** theory".

United HealthCare's Employee Handbook, p. A5-3 (emphasis added), true and correct copies of

portions of which are attached hereto as Exhibit "D". Under the terms of the Arbitration Agreement, Plaintiff and United HealthCare have expressly agreed to arbitrate the very claims she has presented to this Court. As Plaintiff's claims fall within the scope of the Arbitration Agreement to which Plaintiff expressly agreed to be bound, the Federal Arbitration Act requires the Court to compel the parties to arbitration.

## C.    DISMISSAL IS THE PROPER ACTION THIS COURT SHOULD TAKE

Having chosen arbitration as the forum in which to resolve any employment related disputes with United HealthCare, Plaintiff is foreclosed from bringing her federal and state statutory and state common law employment related claims before this Court or any other court. As such, Plaintiff has failed to state a claim for which relief can be granted by this Court. This Court, therefore, should dismiss this case with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), in addition to granting United HealthCare's motion to compel arbitration. By dismissing this case, Plaintiff will be precluded from engaging in an exercise of forum-shopping. Furthermore, the possibility that conflicting decisions will be generated over the same set of facts will be eliminated. A dismissal with prejudice simply forces Plaintiff to operate under the provisions of the Arbitration Policy to which she agreed.

Plaintiff may argue the Act requires the Court to only stay this action pending arbitration, instead of dismissing it. 9 U.S.C. §3. "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynold's, Inc.*, 975 F.2d 1161, 1164 (5th Cir 1992). Indeed, as the *Alford* Court explained, "the weight of the authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration". *Id.* The *Alford* court concluded that because "all of [Plaintiff's] claims were subject to arbitration, the district court acted within its discretion when it dismissed this case with prejudice." *Id.* Accordingly, if this Court determines that all of Plaintiff's claims are subject to the Arbitration Agreement, the proper action is to dismiss all claims with prejudice and compel the

parties to arbitration. In the event that the Court finds that some of Plaintiff's claims are not subject to the Arbitration Agreement, the Court should stay litigation of those claims pending the arbitration of the claims which the Court finds are subject to the Arbitration Agreement.

## IV.

## CONCLUSION

It is well settled that agreements to arbitrate employment related claims are subject to the Federal Arbitration Act's enforcement mandate. Indeed, the very arbitration agreement at issue has been enforced across the nation. *Kelly v. United HealthCare,* 967 F.Supp. 1240 (N.D. Ala. 1997); *Jones v. United HealthCare,* C.A. 4-96-1185(D.Minn. 1997)(unpublished)*;Moore v. United HealthCare,*(N.D. Cal. 1997)(unpublished).

Plaintiff and United HealthCare entered into a binding agreement to arbitrate any employment related dispute which is based on a legal claim. Plaintiff's claims of sexual harassment, assault, and battery by her supervisor and against United HealthCare arise out of her employment with United HealthCare and clearly fall within the scope of the agreement. Accordingly, it is proper for this Court to compel the parties to arbitration and dismiss this lawsuit.

## V.

## PRAYER

WHEREFORE, for the foregoing reasons, Defendants United HealthCare Services and Stacy Duhon respectfully request that this Court find that all of Plaintiff's claims are subject to mandatory binding arbitration under United HealthCare's Employment Arbitration Policy, compel the parties to arbitration, and dismiss all of Plaintiff's claims with prejudice. In the alternative, Defendants request that any of Plaintiff's claims which this Court finds are arbitrable under United HealthCare's

Employment Arbitration Policy be compelled to arbitration under said policy and the remaining causes of action be stayed pending arbitration; and for such other and further relief to which Defendants may be entitled.

Respectfully submitted,

G. MICHAEL PHARIS
State Bar No. 10394
TAYLOR, PORTER BROOKS & PHILLIPS
P.O. Box 2471
Baton Rouge, Louisiana
Telephone: (504) 387-3221
Facsimile:  (504) 346-8049

ATTORNEY-IN-CHARGE FOR DEFENDANT
UNITED HEALTHCARE SERVICES

OF COUNSEL:

BRANDON BLACK
State Bar No. 24298
TAYLOR, PORTER BROOKS & PHILLIPS
P.O. Box 2471
Baton Rouge, Louisiana
Telephone: (504) 387-3221
Facsimile:  (504) 346-8049

SEYFARTH, SHAW, FAIRWEATHER & GERALDSON
TED D. MEYER
Texas State Bar No. 13997500
DELIA JOHNSON
Texas State Bar No. 00797684
700 Louisiana, Suite 3850
Houston, Texas  77002
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340

_Juliet T. Rizzo_

JULIET T. RIZZO
State Bar No. 24626
BREAZEALE, SACHASE & WILSON, L.L.P.
P.O. Box 3197
Baton Rouge, Louisiana 70821
Telephone: (225)
Facsimile: (225)387-5397

### ATTORNEY FOR DEFENDANT  STACY DUHON

OF COUNSEL:

BREAZEALE, SACHASE & WILSON, L.L.P.
MELISSA SHIRLEY
State Bar No. 25248
Baton Rouge, Louisiana 70821
Telephone: (225)
Facsimile: (225)387-5397

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 23rd day of November, 1998, a true and correct copy of the above and foregoing instrument  has been served to Plaintiff's counsel, by ~~certified~~ mail, ~~return receipt requested~~, postage prepaid, addressed as follows:

Ms. Katherine LaPorte
BELCHER & PRENDERGAST
9100 Bluebonnet Blvd., Suite 501
Baton Rouge, Louisiana 70809

BRANDON BLACK

G:\UNITEDHE\MUNIZ\COMPEL.MEM

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ABIGAIL MUNIZ | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 98-766-A-M3 |
| | § | |
| UNITED HEALTHCARE SERVICES | § | |
| and STACY DUHON | § | |
| | § | |
| | § | |
| Defendants | § | |

**AFFIDAVIT OF**

| | |
|---|---|
| THE STATE OF GEORGIA | § |
| | § |
| COUNTY OF GWINNETT | § |

On this day, Thomas Russell, appeared before me, the undersigned notary public, and after I administered an oath to him, upon his oath, he said:

My name is Thomas Russell. I am competent to make this affidavit, and I have personal knowledge of the facts stated below. I understand that this Affidavit may be filed or used for any purpose in connection with the above-referenced action.

1.      I am currently employed by United HealthCare Services, Inc. ("United HealthCare"), as a Director in Corporate Employee Relations. I have held this position since October 1995.

2.      United HealthCare is a corporation headquartered in and incorporated in Minnesota but which has offices, corporate subsidiaries, HMOs, and managed health care plans which it staffs under management contracts throughout the United States.

3.      While I was a Director in Corporate Employee Relations at United HealthCare, I became acquainted with Abigail Muniz, the Plaintiff in the above-referenced case, who was employed by United HealthCare at the Baton Rouge facility. Ms. Muniz was first employed by United HealthCare as a Customer Service Representative in October 1995. She was subsequently promoted to Medicare Personal Services Specialist and remained employed in that capacity at United HealthCare until she was terminated on September 1, 1998 for her failure to return to work.

4.      It is United HealthCare's policy that each employee be given a copy of United

1



HealthCare's Employee Handbook, which contains a discussion of United HealthCare's Internal Dispute Resolution Policy and Arbitration Policy.

5.    The United HealthCare employees are asked to acknowledge their receipt of the Employee Handbook on a preprinted form and to forward their signed copy of the receipt to their Human Resources Representative.

6.    United HealthCare's files contain Ms. Muniz' Acknowledgment which she had signed and dated June 6, 1996 and which indicates she had received a copy of United HealthCare's Employee Handbook. Ms. Muniz specifically acknowledged that she had received and reviewed United HealthCare's Internal Dispute Resolution/Employment Arbitration Policy contained in the Employee Handbook. A true and correct copy of the Acknowledgment of Ms. Muniz is attached hereto as Exhibit 1.

_____
THOMAS RUSSELL, AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME by the said _Thomas Russell_, on this the 20ᵗʰ day of _November_, 1998.

_____
Notary Public in and for
the State of Georgia

Comm. Expires
1/29/2000

2

UNITED HEALTHCARE CORPORATION

**Code of Conduct and
Employee Handbook Acknowledgement**

I acknowledge that I have received a copy of the United HealthCare Corporation (UHC) Code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.

## Code of Conduct

It is of the highest importance to UHC to conduct its business and operations in compliance with applicable law and sound business ethics. I understand that it is my obligation to comply with UHC's Code of Conduct, including the obligation to report violations of the law or the Code of Conduct policy. I will carry out my responsibilities for UHC in accordance with the Code of Conduct and applicable law.

## Employee Handbook

### At-Will Employment

I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and UHC. None of the policies constitute or are intended to constitute a promise of employment. I further understand that UHC may periodically, at its discretion, change, rescind, or add to any policies, benefits or practices with or without prior notice.

I understand that the employment relationship is "at will" and is based upon the mutual consent of myself and UHC. Accordingly, I agree that UHC or I may terminate the employment relationship at any time and for any reason, with or without notice or prior discipline. I understand that only the Chief Executive Officer or the Senior Executive of Human Resources, in a written and signed document, have the authority to make a binding contract or promise relating to employment or to modify "at-will" employment for any employee under any circumstance.

### Specific Acknowledgements

I acknowledge that I have specifically received and reviewed the policies referenced below at the time I received this Handbook and agree to abide by these policies.

**Sexual and Other Harassment (pages A3-1 through A3-2).** Harassment based on age, race, gender, color, religion, national origin, disability, marital status, covered veteran status, sexual orientation, status with respect to public assistance, or any other characteristic protected under state, federal or local law is prohibited in any form at the workplace, at work related functions, anywhere UHC employees are performing their jobs, or which occurs outside of work but affects the workplace. I understand UHC's complaint procedure and prohibition of retaliation and agree to abide by this policy.

**Insider Trading (section A4).** I acknowledge that in carrying out my assigned responsibilities, I may obtain information that is considered material non-public information. I understand that it is my obligation to protect such information and to comply with UHC's Insider Trading policy.


EXHIBIT __1__

Internal Dispute Resolution/Employment Arbitration Policy (section A5). These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under UHC's policy.

**Confidentiality & Data Security (section B2).** I acknowledge that in carrying out my assigned responsibilities as an employee of UHC or its affiliated companies, I may be given access to sensitive and confidential information and to UHC's computer systems. I understand that it is my responsibility to protect the integrity and confidential nature of the information, both during and after my employment with UHC.

## Ownership of Inventions

I agree to assign and hereby assign to UHC all rights (including copyrights and patent rights) I may have in any invention, computer program, discovery, idea, writing, or other work (collectively called "Inventions") created or conceived by me during my employment with UHC which

- relates in any manner to the actual or anticipated business, research, or development of UHC, or
- results from work assigned to or performed by me for UHC
- is conceived of or made with the use of UHC's systems, equipment, materials, facilities, computer programs, or confidential information.

I will at all times, even after termination of my employment, do whatever UHC reasonably requests of me to assign any inventions to UHC or to assist UHC in filing patent applications for any inventions.

This does not apply to an invention which meets the following criteria:

- No equipment, supplies, facility or trade secret information of UHC's was used in its creation;
- It was developed entirely on the employee's own time;
- It does not relate directly to UHC's business;
- It does not relate to UHC's actual or demonstrably anticipated research or development; and
- It does not result from any work performed by the employee for UHC.

## Non-Solicitation

During employment with UHC and for the one year period following termination of employment, I agree not to directly or indirectly attempt to hire away any then-current employee of UHC or to persuade any such employee to leave employment with UHC.

6-6-96
Date

Location

Employee Signature

Employee Name (please print or type)

HR-2001, Rev. 1/96

# Code of Conduct and
## Employee Handbook Acknowledgement

I acknowledge that I have received a copy of the United HealthCare Corporation (UHC) Code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.

## Code of Conduct

It is of the highest importance to UHC to conduct its business and operations in compliance with applicable law and sound business ethics. I understand that it is my obligation to comply with UHC's Code of Conduct, including the obligation to report violations of the law or the Code of Conduct policy. I will carry out my responsibilities for UHC in accordance with the Code of Conduct and applicable law.

## Employee Handbook

### At-Will Employment

I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and UHC. None of the policies constitute or are intended to constitute a promise of employment. I further understand that UHC may periodically, at its discretion, change, rescind, or add to any policies, benefits or practices with or without prior notice.

I understand that the employment relationship is "at will" and is based upon the mutual consent of myself and UHC. Accordingly, I agree that UHC or I may terminate the employment relationship at any time and for any reason, with or without notice or prior discipline. I understand that only the Chief Executive Officer or the Senior Executive of Human Resources, in a written and signed document, have the authority to make a binding contract or promise relating to employment or to modify "at-will" employment for any employee under any circumstance.

### Specific Acknowledgements

I acknowledge that I have specifically received and reviewed the policies referenced below at the time I received this Handbook and agree to abide by these policies.

**Sexual and Other Harassment** (pages A3-1 through A3-2). Harassment based on age, race, gender, color, religion, national origin, disability, marital status, covered veteran status, sexual orientation, status with respect to public assistance, or any other characteristic protected under state, federal or local law is prohibited in any form at the workplace, at work related functions, anywhere UHC employees are performing their jobs, or which occurs outside of work but affects the workplace. I understand UHC's complaint procedure and prohibition of retaliation and agree to abide by this policy.

**Insider Trading** (section A4). I acknowledge that in carrying out my assigned responsibilities, I may obtain information that is considered material non-public information. I understand that it is my obligation to protect such information and to comply with UHC's Insider Trading policy.


EXHIBIT __B__

Internal Dispute Resolution/Employment Arbitration Policy (section A5). These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under UHC's policy.

Confidentiality & Data Security (section B2). I acknowledge that in carrying out my assigned responsibilities as an employee of UHC or its affiliated companies, I may be given access to sensitive and confidential information and to UHC's computer systems. I understand that it is my responsibility to protect the integrity and confidential nature of the information, both during and after my employment with UHC.

## Ownership of Inventions

I agree to assign and hereby assign to UHC all rights (including copyrights and patent rights) I may have in any invention, computer program, discovery, idea, writing, or other work (collectively called "Inventions") created or conceived by me during my employment with UHC which

- relates in any manner to the actual or anticipated business, research, or development of UHC, or
- results from work assigned to or performed by me for UHC
- is conceived of or made with the use of UHC's systems, equipment, materials, facilities, computer programs, or confidential information.

I will at all times, even after termination of my employment, do whatever UHC reasonably requests of me to assign any inventions to UHC or to assist UHC in filing patent applications for any inventions.

This does not apply to an invention which meets the following criteria:

- No equipment, supplies, facility or trade secret information of UHC's was used in its creation;
- It was developed entirely on the employee's own time;
- It does not relate directly to UHC's business;
- It does not relate to UHC's actual or demonstrably anticipated research or development; and
- It does not result from any work performed by the employee for UHC.

## Non-Solicitation

During employment with UHC and for the one year period following termination of employment, I agree not to directly or indirectly attempt to hire away any then-current employee of UHC or to persuade any such employee to leave employment with UHC.

_6-6-96_
Date

_Anton Rouge._
Location

_Abigail Muni_
Employee Signature

_ABIGAIL A MUNIZ_
Employee Name (please print or type)

HR-2001, Rev. 1/96

# UNITED HEALTHCARE CORPORATION
# EMPLOYMENT ARBITRATION POLICY

## A.     STATEMENT OF INTENT

United HealthCare Corporation and its subsidiaries (referred to as "United HealthCare") value each of their employees and look forward to good relations with, and among, all employees. Occasionally, however, disagreements may arise between an individual employee [1] and United HealthCare or between employees in a context that involves United HealthCare. United HealthCare believes that the resolution of those types of disagreements are best accomplished through internal dispute review ("IDR") and, where that fails, by arbitration conducted by the American Arbitration Association ("AAA"). Employees and United HealthCare benefit from the use of private arbitration because it usually results in quicker, less costly resolution of disagreements than litigation in state or federal courts. For these reasons, United HealthCare has adopted this Employment Arbitration Policy (the "Policy").

This Policy does not constitute a promise or agreement that employment will continue for any specified period of time or end only under certain conditions. Employment at United HealthCare is a voluntary relationship existing for no definite period of time, and nothing in this Policy or any other United HealthCare document creates or is intended to create an express or implied contract of employment. While arbitration is an essential element of an employee's employment relationship and is a condition of employment, nothing in this Policy creates or is intended to create any other specific term or condition relating to employment. United HealthCare reserves the right to alter, amend, modify, or revoke this Policy at its sole and absolute discretion at any time with or without notice.

## B.     SCOPE OF POLICY

Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim between United HealthCare and its employees or former employees. The disputes covered under this Policy include any dispute between an employee and any other person where: (1) the employee seeks to hold United HealthCare liable on account of the other person's conduct, or (2) the other person is also covered by this Policy and the dispute arises out of or relates to employment, including termination of employment, with United HealthCare.

Because many employment disputes can be successfully resolved in the IDR process, employees may not use this Policy unless they have first completed the IDR process. If an employment related dispute is not resolved through the IDR process and the matter is based on a legal claim, any party to the dispute may initiate the arbitration process. United HealthCare is not required to follow the steps of either IDR or the Policy before initiating or implementing any disciplinary action.

A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, and the Americans With Disabilities Act; the Employee Retirement Income Security Act of 1974, and all applicable amendments, except as provided in the summary plan descriptions of United HealthCare's benefit plans;

---

[1]     The term "employee(s)" includes both current and former employees of United HealthCare.

EXHIBIT ___C___

state human rights or fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory.

This Policy does not preclude an employee from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board, the Department of Labor, and the Equal Employment Opportunity Commission, or from filing a workers' compensation or unemployment compensation claim in a statutorily-specified forum. In addition, this Policy does not preclude either an employee or United HealthCare from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable law. However, after the court has issued a ruling concerning the emergency or temporary injunctive relief, the employee and United HealthCare are required to submit the dispute to arbitration pursuant to this Policy.

The arbitrator will be bound by the applicable law of the jurisdiction under which the dispute arises. This Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, as set forth in Section E of this Policy, even if the alleged act or omission occurred prior to the applicable effective date.

An issue is subject to arbitration only if it states a claim under applicable federal, state, or local law. United HealthCare may, at its sole discretion, deny a demand for arbitration if it determines that the issue does not state a claim under applicable federal, state, or local law. If United HealthCare denies a demand for arbitration and the employee wishes to pursue the issue, the employee may choose to initiate an action in a court of law with jurisdiction to determine whether the issue states a claim under applicable federal, state, or local law. In the alternative, at its sole discretion, United HealthCare may arbitrate whether the issue is in fact subject to arbitration and may move that the arbitrator dismiss an issue for failing to state a claim under applicable federal, state, or local law. If United HealthCare submits an issue to arbitration, it shall not be deemed as an admission by United HealthCare that the issue is arbitrable or that it states a claim under applicable federal, state, or local law. An arbitrator or a court of law with jurisdiction shall dismiss, without a hearing on the merits, any matter which does not state a claim under applicable federal, state, or local law.

## C.    ARBITRATION RULES AND PROCEDURES

The rules and procedures to be used by the parties are generally based on the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA Rules"). United HealthCare has modified and expanded the rules and procedures in certain respects. In particular, provisions regarding fees and costs have been modified to provide that many of the costs typically shared by the parties will be borne by United HealthCare. In addition, provisions permitting limited discovery have been added to ensure that both parties have similar access to relevant information. The AAA Rules shall govern issues not addressed by this Policy.

1.    Initiation of Arbitration Proceeding

a.    Arbitration Initiated by Employee

In order to make these arbitration procedures available to its employees, United HealthCare shall pay 100 percent in excess of the first twenty-five dollars ($25) of the required AAA administrative fee. An employee may initiate arbitration by submitting a written demand for arbitration to the Senior Executive, Human Resources, with a check for $25 payable to United HealthCare. The demand shall set forth the dispute, including the alleged act or omission at issue, the name, address and telephone number of the employee, and the names of all persons allegedly involved in the act or omission. Within 10 business days

of receiving such demand, if the demand is not denied for failing to state a legal claim, United HealthCare shall file the demand with the appropriate office of the AAA, together with the applicable administrative fee as provided in the AAA's fee schedule.

      b.    Arbitration Initiated by United HealthCare

      United Health Care may initiate arbitration by submitting a written demand for arbitration to the employee's last home address of record via certified mail, or overnight mail. The demand shall set forth the legal claim and dispute, including the alleged act or omission at issue, the name, address and telephone number of the employee, and the names of all persons allegedly involved in the act or omission. Within 10 business days of submitting the demand to the employee, United HealthCare shall file the demand with the appropriate office of the AAA, together with the applicable administrative fee as provided in the AAA's fee schedule. When arbitration is initiated by United HealthCare, the company is responsible for 100% of all AAA administrative fees.

      2.    <u>Appointment of Neutral Arbitrator</u>

      The AAA shall appoint one neutral arbitrator from its Panel of Arbitrators, unless United HealthCare and the employee mutually agree that a panel of three (3) arbitrators be appointed. In the event a panel of arbitrators is appointed, all decisions of the panel must be by a majority and the use of the word "arbitrator" in these Rules shall refer to the panel. The arbitrator shall be appointed in the following manner:

      (a)    As soon as practicable, the AAA shall submit to each party an identical list of proposed arbitrators.

      (b)    Each party shall have ten (10) business days from the mailing date of the list to cross off names of arbitrators to which the party objects, number the remaining names in order of preference and return the list to the AAA. Each party may strike up to three names without cause.

      (c)    If the party does not return the list within the time specified, all persons on the list shall be deemed acceptable.

      (d)    The AAA shall appoint arbitrators remaining on the list in the order of preference, to the extent the order of preference of the parties can be reconciled by the AAA.

      In the event the parties fail to agree on any of the persons named, or if an acceptable arbitrator is unwilling to act, the AAA may issue additional lists or, at its option, make the appointment from among other members of its panel of arbitrators without submitting additional lists.

      3.    <u>Qualifications of Neutral Arbitrator</u>

      No person shall serve as a neutral arbitrator in any matter in which that person has or may have any financial or personal interest in the result of the proceeding. Prior to accepting appointment, the prospective arbitrator shall disclose to the AAA any information or circumstance which may be likely to prevent a prompt hearing, create a presumption of bias, or create a conflict of interest. Upon receipt of such information, the AAA shall either replace that person or communicate the information to the parties for comment. The parties must provide comment to the AAA within ten (10) days of receipt of the

communication. The parties may waive their right to seek disqualification of the arbitrator. If a party seeks disqualification of the arbitrator due to the potentially conflicting circumstance, the AAA shall make the final and conclusive determination concerning disqualification.

4.    Vacancies

If a vacancy occurs, if an appointed arbitrator is unable to serve promptly, or if an arbitrator is disqualified under subparagraph 3 above, the vacancy shall be filled in accordance with subparagraph 2.

5.    Summary Disposition.

The arbitrator shall have the authority to issue an award or partial award without conducting an arbitration hearing on the grounds that there is no claim stated on which relief can be granted or that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law, consistent with Rule 12 or Rule 56 of the Federal Rules of Civil Procedure. Upon the request of either party, the arbitrator will establish a briefing schedule and, if necessary, schedule an opportunity for oral argument prior to considering such motions for summary judgment.

6.    Date, Time and Place of Hearing

The arbitrator shall set the date, time and place of the hearing, written notice of which must be received by the parties from the AAA or arbitrator at least ten (10) days in advance of the hearing, unless the parties agree otherwise.

7.    Representation

Any party may be represented by an attorney, a current non-supervisory United HealthCare coworker, or by him or herself. A party must inform the other party and the AAA of the name, address and telephone number of an authorized representative at least three (3) days prior to the date set for the hearing.

8.    Confidentiality

All proceedings under this Policy are private and confidential, unless applicable law provides to the contrary. The arbitrator shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary. The arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality. An arbitration award may be used by a party only to establish res judicata or collateral estoppel, or as persuasive evidence in a similar proceeding.

9.    Attendance at Hearing

The arbitrator shall have the power to require the exclusion of any witness, other than a party, authorized representative of a party, or other essential person, during the testimony of any other witness. In general, any person who has a direct interest in the arbitration is permitted to attend the arbitration hearing. The arbitrator shall determine whether any other person may attend the hearing.

10.    Postponement

The arbitrator, for good cause shown, may postpone any hearing upon the request of a party or upon the arbitrator's own initiative, and shall also grant such postponement when all of the parties agree to a postponement.

11.    Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by a duly qualified person and, if it is required by law or requested by any party, shall do so.

12.    Stenographic Record

Either party may request a stenographic record of the hearing. The party that requests the record shall bear the cost of such a record. If both parties request a stenographic record, the cost shall be borne equally by the parties.

13.    Proceedings

The hearings shall be conducted by the arbitrator in whatever manner will most expeditiously permit full presentation of the evidence and arguments of the parties. Normally, the hearing shall be completed within one day. For good cause shown, the arbitrator may schedule an extended hearing.

14.    Arbitration in the Absence of a Party

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of the award.

15.    Discovery

    a.    Interrogatory. Each party shall be entitled to propound and serve upon the other party one interrogatory in a form consistent with Rule 33 of the Federal Rules of Civil Procedure and which shall be limited to the identification of potential witnesses. "Identification" means that a party must identify each witness's name, current address and telephone number, and a brief description of the subject of testimony. A copy of Rule 33 of the Federal Rules of Civil Procedure is available upon request.

    b.    Requests for Production of Documents. Each party shall be entitled to propound and serve upon the other party one set of Requests for the Production of Documents in a form consistent with Rule 34 of the Federal Rules of Civil Procedure and which shall be limited in number to twenty-five (25) requests (including subparts, which shall be counted separately). Parties reserve the right to make objections to any document request on the grounds that the request is irrelevant overly broad, vague, or burdensome, or any other objection under the Federal Rules of Civil Procedure. A copy of Rule 34 of the Federal Rules of Civil Procedure is available upon request.

    c.    Depositions. Each party shall be entitled to conduct a maximum of two (2) eight-hour days of depositions of witnesses or of the parties in accordance with the procedures set forth in Rule 30 of the Federal Rules of Civil Procedure. In addition, each party shall be entitled to conduct a maximum of

one (1) eight-hour day of depositions of expert witnesses designated by the other party.  A copy of Rule 30 of the Federal Rules of Civil Procedure is available upon request.

      d.    <u>Physical and Mental Examinations</u>.  Each party shall be entitled to obtain discovery consistent with Rule 35 of the Federal Rules of Civil Procedure.  A copy of Rule 35 of the Federal Rules of Civil Procedure is available upon request.

      e.    <u>Arbitrator Authority</u>.  The arbitrator shall have the authority to resolve all issues concerning discovery which may arise between the parties.  In addition, the arbitrator shall have the authority to issue subpoenas for the appearance of witnesses or the production of documents pursuant to applicable law.

      f.    <u>Prehearing Submissions</u>.  At least thirty (30) days prior to the hearing, the parties are required to exchange lists of witnesses, including any expert witnesses, who the parties anticipate will be called to testify at the hearing.  In addition, the parties are required to exchange copies of all exhibits the parties intend to introduce as evidence at the hearing.

16.    <u>Evidence</u>

      a.    <u>Rules of Evidence</u>.  The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary.

      b.    <u>Evidence by Affidavit and Deposition</u>.  The arbitrator may receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.  The use of depositions in lieu of live testimony at hearings shall be governed by Rule 32 of the Federal Rules of Civil Procedure.

17.    <u>Closing of Hearing</u>

    The arbitrator shall determine whether the parties have any further evidence to offer or witnesses to be heard.  Upon receiving negative replies, or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

18.    <u>Reopening of Hearing</u>

    The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made.  The arbitrator may reopen the hearing and shall have fourteen (14) days from the closing of the reopened hearing within which to make an award.

19.    <u>Waiver of Procedures</u>

    Any party who proceeds with the arbitration after knowledge that any provision or requirement of these procedures has not been complied with, and who fails to state objections thereto in writing, shall be deemed to have waived the right to object.

20.    Time of Award

The award shall be made promptly by the arbitrator unless otherwise agreed by the parties or specified by law. The arbitrator shall be instructed to make the award within thirty (30) days of the hearing or as soon as possible thereafter.

21.    Award

a.    Form. The award shall be in writing and shall be signed by the arbitrator. If any party requests, the arbitrator shall issue an opinion in writing, which shall set forth in summary form the reasons for the arbitrator's determination. All awards shall be executed in the manner required by law.

b.    Scope of Relief. The arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this Policy. Furthermore, the arbitrator shall have no authority to alter or otherwise modify the parties' at will employment relationship. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory limitations on damages. The arbitrator shall not have the authority to award damages or penalties to any entity or individual who is not a party to the arbitration. The arbitrator shall have the authority to award counsel fees to United HealthCare if the arbitrator finds the employee's or former employee's demand for arbitration was frivolous, meritless, or vexatious, or was not submitted in good faith.

c.    Final Judgment. The award shall be final and binding upon all parties to the arbitration. Judicial review shall be in accordance with applicable law.

22.    Delivery of Award to Parties

The award shall be deemed delivered to a party upon placement of the award, or a true and correct copy thereof, addressed to the party or its representative at the last known address in the U.S. mail, certified, return receipt requested; personal service of the award, or a true and correct copy thereof; or the filing of the award in any manner that is permitted by law.

23.    Enforcement and Severability

The decision of the arbitrator may be enforced under the terms of the Federal Arbitration Act (Title 9 United States Code) or, upon agreement of the parties, under the law of the state in which the employee is employed. If the decision is not completely enforceable, final and binding, it shall be enforced and binding on both parties to the extent permitted by law.

If any portion or provision of these procedures is held to be void or unenforceable, the remainder of these procedures will be enforceable and any part may be severed from the remainder, as appropriate.

24.    Judicial Proceedings and Exclusion of Liability

a.    Neither the AAA nor any arbitrator in a proceeding under these procedures is a necessary party in judicial proceedings relating to the arbitration.

b.    Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction over the award.

25.    Expenses

The expenses of witnesses for either side shall be paid by the party requiring the presence of such witnesses. Each side shall pay its own legal fees and expenses, except where such legal fees and expenses may be awarded under applicable law.  All other expenses (except Postponement Fees or Additional Hearing Fees) of the arbitration, such as required travel and other expenses of the arbitrator (including any witness produced at the direction of the arbitrator), and the expenses of a representative of AAA, if any, shall be paid completely by United HealthCare. However, if the arbitrator finds that the employee's or United HealthCare's complaint is frivolous, meritless, or vexatious, or was not filed in good faith, the arbitrator may require the employee or UHC, as applicable to reimburse the other party for the arbitrator's expenses. This allocation of expenses may not be changed by the arbitration award.

26.    Service of Notice

Any notice necessary or proper for the initiation or continuation of an arbitration under these procedures, for any related court action, or for the entry of judgment on an award made under these procedures may be served on a party by U.S. Mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held. The AAA, the arbitrator, and the parties may also use facsimile transmission, telex, telegram, or other written forms of electronic communication to give the notice required by these procedures, provided that such notice is confirmed by telephone or subsequent mailing to all affected parties.

27.    Time Period for Arbitration

The written Demand for Arbitration must be received within the time period allowed pursuant to the statute, regulation, or other law applicable to the alleged act or omission giving rise to the dispute. Employees must provide United HealthCare with notice of any act or omission which may give rise to a dispute subject to arbitration under this Policy as soon as practicable.

An employee is required to complete the IDR process before initiating arbitration under this Policy. If an employee has not initiated the IDR process within the time limits specified in the IDR Policy and if the employee's employment related dispute is arbitrable under this Policy, United HealthCare may waive the time limits specified in the IDR Policy and require that the employee complete the IDR process.

28.    Interpretation and Application of Procedure

The arbitrator shall interpret and apply these procedures insofar as they relate to the arbitrator's powers and duties.  All other procedures shall be interpreted and applied by the AAA.

D.    AMENDMENT OR TERMINATION OF ARBITRATION POLICY

United HealthCare reserves the right to alter, amend, modify, or revoke this Policy at its sole and absolute discretion at any time with or without notice.  Any alteration, amendment, modification, or revocation may be done only in writing, signed by the Senior Executive, Human Resources.  Any other alterations, amendments, modifications, or revocations to this Policy, whether written or oral, are invalid and unenforceable.

## E.    EFFECTIVE DATE

This Policy became effective on October 2, 1995 for all persons employed by United HealthCare Corporation or its subsidiaries who were assigned to The MetraHealth Companies, Inc., or any of its subsidiaries. This Policy became effective on January 1, 1996 for all other employees of United HealthCare Corporation or its subsidiaries employed on or after that date.

All arbitrations shall be conducted in accordance with the Policy in effect on the date the Senior Executive of Human Resources receives the Demand for Arbitration.

This Policy has been revised effective October 1, 1997.

arb.p10

UNITED HEALTHCARE EMPLOYEE HANDBOOK

Section: Corporate Policies and Practices                    **Work Conduct and Discipline**

**SEXUAL & OTHER
HARASSMENT**                UHC policy is to provide a work environment that is free from harassment.
Therefore UHC will not tolerate harassment based on age, race, gender,
color, religion, national origin, disability, marital status, covered veteran
status, sexual orientation, status with respect to public assistance and other
characteristics protected under state, federal or local law.  Such conduct is
prohibited in any form at the workplace, at work related functions, or outside
of work if it affects the workplace. This policy applies to all UHC
employees, clients, customers, guests, vendors and persons doing business
with UHC.

Sexual harassment, one type of prohibited harassment, has been defined as:

> *Unwelcome sexual advances, requests for sexual favors, and other
> verbal or physical conduct of a sexual nature when...*

> ... *submission to such conduct is made a term or condition, either
> explicitly or implicitly, of an individual's employment;*

> ... *submission to or rejection of such conduct by an individual is
> used as a factor in decisions affecting that individual's
> employment; or*

> ... *such conduct has the purpose or effect of substantially
> interfering with an individual's work performance or creates an
> intimidating, hostile or offensive working environment.*

Examples of conduct prohibited by this policy include but are not limited to:

> unwelcome sexual flirtation, advances or propositions
> verbal comments related to an individual's age, race, gender, color,
> religion, national origin, disability or sexual orientation
> explicit or degrading verbal comments about another individual or
> his/her appearance
> the display of sexually suggestive pictures or objects in any workplace
> location including transmission or display via computer
> any sexually offensive or abusive physical conduct
> the taking of or the refusal to take any personnel action based on an
> employee's submission to or refusal of sexual overtures
> displaying cartoons or telling jokes which relate to an individual's age,
> race, gender, color, religion, national origin, disability or sexual
> orientation

EXHIBIT ___D___

UNITED HEALTHCARE EMPLOYEE HANDBOOK

Section: Corporate Policies and Practices

# Work Conduct and Discipline

If you believe that you are being subjected to harassment, you should:

1. If you feel comfortable, tell the harasser that his or her actions are not welcome and they must stop.

2. Immediately report the incident to your supervisor/manager, the site Human Resources representative (HRR) or the Employee Relations Department.

3. If additional incidents occur, immediately report them to one of the above resources.

Any reported incident will be investigated. Complaints and actions taken to resolve complaints will be handled as confidentially as possible, given UHC's obligation to investigate and act upon reports of such harassment.

Retaliation of any kind against an employee who reports a suspected incident of sexual harassment is prohibited. An employee who violates this policy or retaliates against an employee in any way will be subject to disciplinary action up to and including termination.

## VIOLENCE-FREE WORKPLACE

It is UHC's policy to provide a workplace that is safe and free from all threatening and intimidating conduct. Therefore, UHC will not tolerate violence or threats of violence in any form in the workplace, at work related functions or outside of work if it affects the workplace. This policy applies to all UHC employees, clients, customers, guests, vendors, and persons doing business with UHC.

It will be a violation of this policy for any individual to engage in any conduct, verbal or physical, which intimidates, endangers or creates the perception of intent to harm persons or property. Examples include but are not limited to:

- physical assaults or threats of physical assault, whether made in person or by other means (e.g., in writing, by phone, fax or e-mail)
- verbal conduct that is intimidating and has the purpose or effect of threatening the health or safety of a co-worker

## DRESS
## GUIDELINES

Business attire should be conducive to a professional business environment and enable the wearer to interact with customers, clients and fellow employees in a professional manner. Therefore, please dress for work in a manner that:

- reflects an image of professionalism and our concern for quality products and service
- is not distracting or disrespectful of other employees
- is consistent with the guidelines established by the location senior management

## TRAVEL AND
## EXPENSE
## REIMBURSEMENT

If your position requires business travel, you should exercise sound business judgment when incurring expenses; in other words, spend corporate dollars as if they were your own. You are required to make all travel arrangements through the UHC designated travel agency, using UHC's preferred suppliers. Contact UHC's travel agency for travel reservations and for travel and expense reimbursement guidelines and procedures. If you have not traveled on UHC business before, see your supervisor/manager for travel and expense reimbursement guidelines and/or call the UHC Travel Services department.

## DISCIPLINE
## AND DISCHARGE

UHC reserves the right to terminate an employee at any time for any reason with or without prior disciplinary counseling or notice. Nothing in this handbook or any other UHC document is intended to:

- modify this "at-will" employment
- promise progressive discipline or disciplinary counseling
- promise notice in circumstances where UHC considers immediate termination or discipline to be appropriate.

Disciplinary actions may entail verbal, written, final warnings, suspension, or termination. All of these actions may not be followed in some instances. UHC reserves the right to exercise discretion in discipline. Prior warning is not a requirement for termination. If you are disciplined in writing, copies of your warnings are placed in your personnel file.

UNITED HEALTHCARE EMPLOYEE HANDBOOK

Section: Corporate Policies and Practices                    **Work Conduct and Discipline**

UHC reserves the right to take any disciplinary action it considers appropriate, including termination, at any time. In addition to those situations discussed elsewhere in this handbook, listed below are some other examples where immediate termination could result. This list is general in nature and is not intended to be all inclusive:

- discourtesy to a customer, provider, or the general public resulting in a complaint or loss of good will
- refusal or failure to follow directives from a supervisor, manager, or UHC officer.
- breach of confidentiality relating to employer, employee, customer, or provider information
- altering, damaging or destroying company property or records or another employee's property
- dishonesty
- providing false or misleading information to any UHC representative or on any UHC or customer records including the employment application, benefit forms, time cards, expense reimbursement forms, etc.
- fighting or engaging in disorderly conduct on UHC's or customer's premises
- violations of any of UHC's employment policies including but not limited to confidentiality, security, solicitation, insider trading, conflict of interest, and code of conduct
- conduct or performance issues of a serious nature

UHC recognizes that personal issues can sometimes affect your performance. The Employee Assistance Program (EAP) is available to employees and their families to provide confidential help with a wide variety of personal problems, issues and concerns. Use of EAP services, however, does not excuse you from complying with company policies or procedures or from achieving job requirements or expectations during or after receiving EAP assistance, nor will participation in EAP prevent UHC from taking disciplinary action when warranted.

**RESIGNATION**   Should you resign from your job, UHC requests, but does not require, that you provide your immediate supervisor with two weeks notice prior to your last day at work in order to facilitate the transfer of your duties to another employee. UHC reserves the right to reduce notice periods of more than four weeks where appropriate.

UNITED HEALTHCARE EMPLOYEE HANDBOOK

Section: Corporate Policies and Practices                                    **Dispute Resolution**

**INTERNAL DISPUTE
RESOLUTION
POLICY**                    **Statement of Intent**

United HealthCare and its subsidiaries value each of their employees and
look forward to good relations with, and among, all employees. Even in the
best of relationships, misunderstandings and concerns may sometimes occur.
We believe workplace concerns are best resolved through open and candid
discussions with your manager and we encourage you to discuss any
concerns as soon as they arise. If, however, there is ever an employment-
related action or decision which you feel requires more in-depth or formal
review, you should use the Internal Dispute Resolution ("IDR") process.
IDR provides thorough and formal management review of your employment
related concerns.

**Process**

To start the IDR process, you should submit a written statement of the
concern within five working days after the informal discussion with your
manager, but no later than 20 working days from the decision/action which
gives rise to your concern.

If requested by either you or your manager, a meeting (or teleconference if
you and your manager are in different locations) will be scheduled, usually
within ten working days from receipt of the written concern, to discuss the
issue. The appropriate Human Resource representative (HRR) should attend
this meeting. The manager reviewing the concern will provide a written
response within ten working days of the meeting.

If the matter is not resolved at this stage, an appeal can be made in
accordance with the following steps.

Step 2 - Department head/site manager
Step 3 - Site vice president, or your business operation/unit head

(Specific manager levels and titles will be clarified by your HRR for your
specific business unit.)

Appeals to the next higher level of review should be submitted in writing
within five working days from receiving a written response to the prior step.
Forms to appeal the concerns may be obtained from the appropriate HRR.
Any management response not appealed to the next level within five working
days from the written decision at the prior step will be considered as

**Dispute Resolution**

---

satisfactory to you. At both Steps 2 and 3, you may request a meeting which may be held in person or by teleconference within ten business days of submitting your appeal. In addition, your HRR will attend all meetings. The manager reviewing the concern will provide a written response to you within ten working days of the meeting.

Step 3 answers are the final review in the IDR process and considered final and binding on you and your immediate manager except that you may request arbitration, in accordance with the United HealthCare Employment Arbitration Policy, for those issues subject to the policy.

No management decision or disciplinary action will be delayed or postponed as the result of your having filed or appealed a concern in the IDR process. An employee may appeal his/her termination of employment directly to Step 3. An appeal of a termination must be submitted in writing within 20 days of the termination. In addition to the IDR steps, employees may report allegations of discrimination, including sexual harassment, directly to any United HealthCare manager, their HRR or to Corporate Employee Relations.

The IDR process is designed to ensure that employment concerns and disputes are resolved promptly, fairly and privately. Employees may use the IDR process without fear or reprisal and will not be subject to any retaliatory actions. Because this is an internal process, neither managers nor employees may record any IDR meeting, nor may they have any representation during the IDR process.

**Relationship Between Internal Dispute Resolution and Arbitration**

Because we believe that employment disputes can be successfully resolved in the IDR process, an employee cannot use the arbitration process unless they have first completed the IDR process.

## ARBITRATION POLICY

**Statement of Intent**

United HealthCare believes that the resolution of disagreements that arise between an individual employee and United HealthCare or between employees in a context that involves United HealthCare are best accomplished by internal dispute review (IDR) and, where that fails, by arbitration based on the rules of the American Arbitration Association. Employees and United HealthCare benefit from the use of private arbitration because it usually results in quicker, less costly resolution of disagreements

---

# Dispute Resolution

than litigation in state or federal courts. For these reasons, United HealthCare has adopted an Employment Arbitration Policy (the "Policy").

## Interpretation

This Summary provides general information regarding the Arbitration Policy. In the event of a conflict between this Summary and the Policy, the terms of the Policy shall govern in all cases. Please contact your HRR or Corporate Employee Relations for a copy of the Policy.

United HealthCare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice. The senior executive of Human Resources has the sole authority to alter, amend, modify or revoke the Policy.

## Scope of Policy

Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. If an employment related dispute is not resolved through the IDR process and the matter is based on a legal claim, any party to the dispute may initiate the arbitration process.

A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, and all applicable amendments; state human rights or fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory. The arbitrator will be bound by the applicable law of the jurisdiction under which the dispute arises. The Policy covers any dispute subject to arbitration which is brought on or after the applicable effective date, even if the alleged act or omission occurred prior to the applicable effective date. An issue is not subject to arbitration, and an arbitrator or a court of law with jurisdiction may dismiss without a hearing on the merits, any matter which does not state a claim under applicable federal, state, or local law.

# Dispute Resolution

## Arbitration Rules and Procedures

The rules and procedures to be used by the parties are based on the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). United HealthCare has modified and expanded the rules and procedures in certain respects. In particular, provisions regarding fees and costs have been modified to provide that many of the costs typically shared by the parties will be borne by United HealthCare. In addition, provisions permitting limited discovery have been added to ensure that both parties have equal access to relevant information.

## Initiation of Arbitration Proceeding

United HealthCare shall pay 100 percent in excess of $25 of the required AAA administrative fee. An employee may initiate arbitration by submitting a written demand for arbitration to the Senior Executive, United HealthCare Human Resources with a check for $25 payable to United HealthCare. The demand shall set forth the claim, including the alleged act or omission at issue and the names of all persons allegedly involved in the act or omission (your HRR can provide you with a copy of United HealthCare's demand form). Within ten business days of receiving such demand, United HealthCare shall file the demand with the appropriate office of the AAA, together with the applicable administrative fee as provided in the AAA's fee schedule.

## Representation

Any party may be represented by an attorney, a current nonsupervisory United HealthCare coworker, or by him or herself.

## Scope of Relief

The arbitrator shall:

- follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this Policy.
- have no authority to alter or otherwise modify the parties' at will employment relationship.
- have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is consistent with applicable law including statutory limitations on damages.